Plaintiff, alleging itself to be the owner of an undivided one-half interest in the East one-half (E 1/2) of the Northwest Quarter (NW 1/4), Section Sixteen (16), Township Twenty-Three North (23), Range One East (1), located in Union Parish, Louisiana, instituted this suit against the heirs and legal representatives of Andy Harrison, deceased, of whom there are many, to effect a partition by licitation. Plaintiff admits that said heirs own the other one-half interest. It was also alleged that its interest in the land was acquired by Frost-Johnson Lumber Company, a corporation, from Wallace Clark Mercantile Company, a co-partnership, and its component members in November, 1920; that the corporate name of the vendee in said deed was subsequently changed by corporate action to Frost Lumber Industries, Inc.; that said Wallace Clark Mercantile Company acquired said one-half interest from Mariah Harrison, mother and grandmother of the defendants, by warranty deed dated November 21, 1913; that Andy Harrison, deceased, husband of Mariah Harrison, acquired the entirety of the land during the existence of their marriage.
The defendants, represented by counsel, deny that their mother executed a deed of her interest in the land to Wallace Clark Mercantile Company, and deny that plaintiff owns any interest whatever therein. They aver that the land is wholly owned by them and their said mother, and pray that the suit be dismissed at plaintiff's cost. The Curator ad Hoc appointed to represent several absent major heirs and who was also appointed Tutor ad Hoc for one minor heir, in said capacities, answered the petition and in addition to the defenses set up by the heirs represented by counsel, also, in the alternative, pled other defenses which the present status of the case renders unnecessary to here summarize.
Some time subsequent to the case being put at issue by answers, Mariah Harrison intervened in the suit and opposed the demands of the plaintiff. She denied executing the alleged deed to Wallace Clark Mercantile Company. She alleged that the land was acquired by her deceased husband, Andy Harrison, during their marriage, and that on his death in the year 1905, one-half interest therein devolved upon her as widow in community and that she now owns such interest.
In the alternative, the deed allegedly signed by her to Wallace Clark Mercantile Company is attacked on several grounds but for reasons hereinafter set forth, the nature of these grounds is not here given. Further, in the alternative, she alleged that since November 21, 1913, (date of said alleged deed) she has been in the physical possession of said eighty acre tract of land as owner; that practically all of it has been in a state of cultivation for said time; that the land has continuously been assessed to her and taxes thereon paid by her; that she has claimed exemption from payment of taxes thereon since the adoption of the law providing therefor; that she has cut wood and timber therefrom and in other ways exercised and maintained corporeal possession thereof for more than thirty years. She pleads prescription of thirty years in bar of plaintiff's claim of ownership, and prays that plaintiff's suit he dismissed at its cost and that she be recognized as owner of one-half interest in the tract.
Plaintiff, answering the intervention, affirms the genuineness and the validity of the alleged deed from Mariah to the Wallace Clark Mercantile Company. It denies that intervenor has possessed the land in the manner and for the time asserted by her. Plaintiff further pleads that having sold her interest in the land by warranty deed, Mariah Harrison, because of *Page 834 
the covenant of warranty on her part, is precluded from re-acquiring same through possession and prescription.
There was judgment for plaintiff as prayed for by it. The intervention and third opposition were dismissed and the demands therein made were rejected. Only the intervenor appealed. The defendants not having appealed, have passed from the case.
[1] In brief in this court, intervenor's counsel concede that plaintiff successfully refuted the charge that intervenor did not sign and execute the deed to Wallace Clark Mercantile Company. We have studied the testimony adduced on this issue and are convinced that the deed is genuine and fully binding upon the intervenor. There remains but one other question for decision and that is the plea of prescription of thirty years interposed by the intervenor.
Mariah Harrison, the record reveals, was eighty-six years old and bedridden when the case was tried. She is a member of the colored race and illiterate. No effort was made to have her give testimony in the case. Two of her sons, Joe Harrison, age forty-seven, and Fonnie Harrison, age fifty-five, did testify as witnesses.
It is not certain that prior to 1941 either of the named sons knew that their mother had parted with her interest in the land. They had heard so but she denied it when asked by them. It is entirely probable she had forgotten doing so.
It is certain that the possession and control of the eighty acre tract underwent no change from November 21, 1913 to the time this suit was filed. About sixty-five acres of the tract are now enclosed by some sort of fence and in a state of cultivation, and have been so for over forty years, continuously. Fifteen acres of the tract, being its south end, carries timber. This part of the tract is not now enclosed, but was enclosed to about the year 1930.
Neither the plaintiff nor its vendor evinced any interest whatever in the land prior to 1926. For that year and continuously since, the one-half interest claimed by it was returned for assessment purposes and taxes thereunder paid by plaintiff.
[2] In 1941, a representative of plaintiff discovered that some of the trees on the fifteen acre tract had been cut and mentioned the fact to Joe Harrison, who was informed by this representative that as the land was owned in indivision neither owner had the right to cut and remove the timber. Beyond this no effort was made by plaintiff's representatives to question the possession of Mariah or the ownership of the defendants. Such acts did not have the effect of interrupting or disturbing, in legal contemplation, the possession held adversely to plaintiff.
When Andy Harrison acquired the eighty acres involved herein, in the same deed he also acquired the E 1/2 of the SW 1/4 of Section 9, adjoining. He established his home on the south forty of that tract, and he and his children, after years of toil, cleared, enclosed and put in cultivation the entire one hundred sixty acres. The widow and some of his children have continuously since that accomplishment tilled and otherwise exercised acts of physical possession on and over the one hundred sixty acres, excepting the fifteen acres, above mentioned, on which timber has grown during the past forty years.
When this suit was tried and for several years prior, only Joe and Fonnie Harrison lived on the land with their mother. Both testified that they had their mother's consent to till the land and from the crops produced therefrom, provided her with subsistence, etc. She continued to be usufructuary of the heirs' one-half interest after having disposed of her own interest. These sons did not say, in so many words, that they leased the land from Mariah. We judge from what they did say that they recognized their mother's superior right to and over the land, procured her consent to live on and cultivate such portions of it as they desired, and, in return for its use, paid her rent by providing for her the necessities of life.
[3] With respect to the timbered fifteen acres, the enclosure around it was removed about the year 1930. It was cultivated by Fonnie Harrison in 1906. Since the fence was removed, Mariah and her two named sons, as their needs required, *Page 835 
cut firewood, posts, ties, etc. therefrom and in other ways manifested an intention to continue possession of it. This sort of possession, following corporeal possession, was sufficient to serve as a link in the possession necessary to the prescription of thirty years. R.C.C.Article 3501.
Concerning prescription of thirty years, Article 3499, R.C.C., reads: "The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith."
[4] To acquire real estate through this prescription possession must be continuous and uninterrupted during the time. It also must be public and unequivocal, and as owner. R.C.C.Article 3500. The prescription "extends only to that which has been actually possessed by the person pleading it". R.C.C.Article 3503. But possession when once acquired and not interrupted may "be preserved by external and public signs, * * * as the keeping up of roads and levees, the payment of taxes, and other similar acts." R.C.C.Article 3501.
[5] It is not true, as contended by appellee, that a vendor is precluded on account of his warranty from re-acquiring realty sold by him by the prescription of thirty years. That he may do so has been expressly held by this and the Supreme Court. See: Succession of Zebriska, 119 La. 1076, 44 So. 893; Roe v. Bundy's Heirs, 45 La. Ann. 398, 12 So. 759; Louisiana Highway Commission v. Raxsdale et al., La. App., 12 So.2d 631.
In the Zebriska case, on page 1079 of 119 La., page 894 of 44 So., the court said: " In the case of Roe v. Bundy's Heirs, 45 La. Ann. 398, 12 So. 759, this court said that the vendor is not precluded from re-acquiring by prescription the property he has sold."
Plaintiff relies upon the case of Roberts v. Phillips, 6 La. App., 394, to support its position that Mariah was precluded from re-acquiring by prescription the interest in the land. Some statements in the opinion in this case do give material comfort to plaintiff, but these are opposed to the holdings in the above cited cases which undoubtedly sustain the contrary doctrine.
We are informed in brief of intervenor that the lower court in decision turned upon the question of whether possession of the eighty acre tract was by Mariah Harrison as owner. It did not think so. This character of possession is indispensable to the efficacy of such a plea.
[6] Mariah's possession of the heirs' interest in the land, was in the capacity of usufructuary. So long as this status existed she could not acquire their interest by prescription. She was obligated to pay all taxes assessed against that interest so long as she exercised the rights of usufructuary. As to the other one-half interest, the record, in our opinion, fairly well establishes that her possession was that of owner. Uncontrardicted facts warrant the presumption on that she did so possess. In the absence of clear and convincing proof to the contrary, one is presumed to possess as master and owner. R.C.C.Article 3488.
These conclusions are clearly reflected from established facts. The land was assessed to her annually and she paid taxes thereunder until the law was adopted that relieved her of this obligation, the property being assessed at not over $2,000.00. Thereafter, she annually applied for and was granted the exemption mentioned. It is reasonable to conclude, all things considered, that Joe and Fonnic Harrison, in legal effect and contemplation, possessed for their mother.
[7] We are of the opinion that the plea of prescription should have been sustained. For the reasons herein assigned, the judgment appealed from is reversed, annulled and set aside, and said plea is hereby sustained. The intervenor, Mariah Harrison, is now recognized as the owner of an undivided one-half interest in the land in controversy, to-wit:
East One-Half (E 1/2) of the Northwest Quarter (NW 1/4), Section Sixteen (16) Township Twenty-Three (23) North, Range One (1) East, located in Union Parish, Louisiana. It is further adjudged and decreed that plaintiff's demands be rejected and its suit dismissed at its cost. *Page 836