366 So.2d 209 (1978)
Richard Allen COLLINS and Jannie Bennett Collins, Plaintiffs-Appellees,
v.
Harold K. QUINN, Defendant-Appellant.
No. 13720.
Court of Appeal of Louisiana, Second Circuit.
December 4, 1978.
*210 Giddens, McKenzie & Garrett by T. K. Giddens, Jr. and J. David Garrett, Shreveport, for defendant-appellant.
Roos & Roos by Armand W. Roos, Jr., Shreveport, for plaintiffs-appellees.
Before PRICE, HALL and MARVIN, JJ.
HALL, Judge.
A few months more than five years after their property was sold at tax sale to defendant, Harold K. Quinn, plaintiffs, Richard A. and Jannie Bennett Collins, filed suit to annul the tax sale, alleging no notice of the tax delinquency or sale was given to them and that they continued in possession of the property after the sale. Defendant denied plaintiff's possession, pled the five-year peremption of suits to annul tax sales,[1] *211 sought to be recognized as owner, and, alternatively, sought recovery of the taxes paid by him. After trial, the district court in an excellent written opinion found that no notice was received by plaintiffs, that plaintiffs continued to possess the property continuously after the tax sale, and that plaintiffs' suit to annul the sale was not barred by the five-year peremption. From judgment annulling the tax sale and ordering payment by plaintiff to defendant of $63.63 back taxes, defendant appealed. We affirm.
Defendant specifies as error the trial court's factual finding that a garden was maintained on the property and defendant further contends that such activity, conducted primarily by others, does not constitute sufficient possession to prevent the running of the five-year peremptive period.
In April 1969 plaintiffs bought two contiguous tracts of land measuring a total of 125 feet along the Johns Gin Road in Caddo Parish from the Gibbs and the Lees. Mrs. Gibbs and Mrs. Lee were sisters of plaintiff, Mrs. Collins. The tract was thought to be located between the Gibbs' residence and a rent house owned by the Lees who lived next door to it. Actually, as revealed by a survey made after this suit was filed, the rent house was located partially on the tract. The Collins expected to build a home on the lot, but never did.
In June 1972 the property was sold at tax sale to defendant for unpaid 1971 taxes. The evidence established that notice of the taxes due was not received by plaintiffs, making the sale subject to annulment. No issue in this regard is made by defendant on appeal.
The Collins lived in Detroit where Mr. Collins was working until Mrs. Collins returned to Shreveport in 1975. This suit was filed in October 1977.
Plaintiffs contended and proved to the satisfaction of the trial court that they have been in continuous possession since the tax sale, both through the activities of Mrs. Collins and through the activities of her family members, the Gibbs and the Lees.
The testimony of Mrs. Collins, her family members, and tenants of the rent house establishes that a garden was maintained on the property each year since 1971. Mrs. Collins helped with the garden each year after she returned to Shreveport.
Defendant attacks the trial court's finding that the garden existed in the face of photographs taken by defendant shortly *212 before the suit was filed showing no trace of a garden and the testimony of a surveyor who surveyed the property shortly before trial to the effect that he did not notice a garden. The trial court specifically found plaintiffs' five witnesses were credible. The trial court noted there was no evidence as to how long the vestiges of a garden would exist after the planting season or what was done with the land upon which the garden was grown upon the end of each season. The defendant produced no witnesses who were living in the neighborhood or who were familiar with the property to contradict the testimony presented by plaintiffs. There is sufficient evidence to support the trial judge's factual finding and we cannot say he committed manifest error.
The possession necessary to defeat the tolling of the peremptive period must be continued, constant, corporeal possession of such a nature as to form a constant protest to the tax sale; it must also be of such character as to form the basis of ten-year acquisitive prescription. Gulotta v. Cutshaw, 283 So.2d 482 (La.1973); Westover Realty Co., Inc. v. State, 208 La. 163, 23 So.2d 33 (1945); Holleyman v. Garbarino, 358 So.2d 365 (La.App. 3d Cir. 1978), writ refused 359 So.2d 1304 (La.1978).
Defendant contends intermittent maintenance of the garden is insufficient possession to suspend the peremptive period, citing Lasseigne v. Clement, 311 So.2d 600 (La.App. 4th Cir. 1975), writ denied 313 So.2d 846 (La.1975) and Kuhn v. Sandefur, 28 So.2d 515 (La.App. 2d Cir. 1946), writ denied. He also contends possession by others does not inure to the benefit of the owner, citing Holleyman, supra.
The evidence establishes other acts of possession in addition to the gardening. The Lees and the Gibbs used the lot as part of the yards of the rent house and of the Gibbs' residence. The Gibbs built a fence on the lot in 1971, maintained a law, cut the grass, and maintained shrubs and the like. The rent house, located partially on the property, was rented continuously until about the time this suit was filed. Items related to the rent house were stored on the lot.
LSA-C.C. Art. 3556, § 25 defines precarious possession as that possession "which one enjoys by the leave of another, and during his pleasure." The vendor who continues in possession following the sale is presumed to be a precarious possessor for his vendee. Frost Lumber Industries v. Harrison, 215 La. 767, 41 So.2d 674 (1949). One who possesses land with the permission or sufferance of the owner possesses the land for the owner. Dutile v. Aymond, 338 So.2d 350 (La.App. 3d Cir. 1976), writ denied 340 So.2d 998 (La.1977). The record shows that the Gibbs and the Lees, plaintiffs' vendors and members of plaintiffs' family, possessed the property at least at the sufferance of the plaintiffs, if not with their permission. Therefore, the acts of the Gibbs, Lees and the Lees' tenants on the property are attributable to plaintiffs. The property has been continuously and corporeally possessed in a manner which would have notified defendant that the owner protested the tax sale. Had defendant visited the property at any time within five years after the sale, he would have been able to see that someone was possessing the property as owner adverse to his tax sale claim.
The cases relied upon by defendant cited supra are distinguishable from this case. In Lasseigne and Kuhn the property was only intermittently possessed by the tax debtors, or the acts of possession were not of the type to form a constant protest to the tax sale, that is, they were not inconsistent with the ownership of the tax adjudicatee. In Holleyman, the maintenance by a servitude owner of a railroad track was the exercise of a real right which continued regardless of ownership of the land and did not stand as a protest against the tax sale. In the instant case, the fencing of part of the property in question, renting a house partly located on it, growing a garden on it, and using it as a yard was notice to defendant that the property was being possessed adverse to his claim of ownership. The property was in no sense abandoned by the tax debtors.
*213 We find, as did the trial court, that the corporeal possession by or for plaintiffs was sufficient to suspend the peremptive period. The trial court's judgment is affirmed.
Affirmed.
NOTES
[1] The five-year peremption relied on by defendant was contained in Article 10, § 11 of the 1921 Constitution:

". . . No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within five years from the date of the rendition of the tax deed, if no notice is given. . . ."
LSA-R.S. 47:2226 provides:
"No sale of property for taxes shall be set aside except as provided in Article X, Section 11 of the Louisiana Constitution."
See also LSA-R.S. 47:2228 which establishes the procedure to quiet tax titles based on peremption of five years under the 1921 Constitutional provision.
The pertinent provisions of Article 10, § 11 were carried forward with editorial changes as Article 7, § 25(C) of the 1974 Constitution:
"No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of recordation of the tax deed if no notice is given. . . ."
It may be that the editorial changes have drastically changed the constitutional provision and eliminated the five-year peremptive period for filing suits to annul tax sales. The language of Article 7, § 25(C) quoted above does not provide that suits to set aside tax sales must be brought within five years after the date of recordation of the tax deed. The only requirement is that such a suit be instituted within six months after notice of sale. As written, the five-year reference is to the time of service of the notice of sale.
It is easy to see how the apparent error in editing occurred. Article 10, § 11 had been interpreted as if a comma existed after the word "expired", so that the five-year requirement related back to the institution of suit; the only reasonable interpretation of the provision. However, a literal grammatical reading of the 1921 Constitutional provision, without the imaginary comma, makes the five-year requirement relate to service of notice. The 1974 Constitution editors in dressing up the wording and style, apparently restated the literal grammatical meaning rather than the meaning as intended and consistently applied under the 1921 Constitution. The effect is to omit any requirement that a suit to annul be instituted within five years after recordation of the tax sale deed.
The problem was noted in 21 Loy.L.Rev. 99 as follows:
"Another drafting error occurred in Article VII, Section 25 of the 1974 Constitution which attempted simply to reword Article X, Section 11 of the 1921 Constitution, but in the process may have eliminated the five-year preemption [sic] after recordation of a tax deed. This can and certainly should be corrected by legislation. See La.Rev.Stat. § 47:2228 (Supp.1974)."
Because of our holding that the peremptive period, if it still exists under the 1974 Constitution, did not accrue in this case and because no question of the viability of the five-year peremption is raised by the parties, we express no opinion on the effect of the change in language in Article 7, § 25(C).